IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| )<br>)<br>UNITED HERITAGE LIFE INSURANCE )<br>COMPANY, *et al.*, )<br>)<br>          Plaintiffs, )<br>)<br>v. )<br>)<br>FIRST MATRIX INVESTMENT )<br>SERVICES CORPORATION, a Texas )<br>corporation; UNITED WESTERN )<br>BANCORP, f/k/a Matrix Bancorp, Inc., a )<br>Colorado corporation; and )<br>DUNCAN-WILLIAMS, INC., a Tennessee )<br>corporation, *et al.*, )<br>)<br>          Defendants. )<br>_____) | Case No. CV  06-0496-S-MHW<br><br>**MEMORANDUM DECISION<br>AND ORDER** | |

      Currently pending before the Court is Defendants Duncan-Williams, Inc., Duncan F.

Williams, and Carolyn Williams' Motion to Dismiss (Docket No. 13), filed on January 16, 2007;

Plaintiffs United Heritage Financial Group, Inc. and United Heritage Insurance Co.'s Motion for

Leave to File Amended Complaint (Docket No. 16), filed on February 1, 2007; and Plaintiffs'

Motion to Strike Affidavit of Adis Crihfield (Docket No. 34), filed April 13, 2007.

**Memorandum Decision and Order - Page 1**

# I.
## Procedural Background

Plaintiffs United Heritage Financial Group, Inc. and United Heritage Life Insurance Co. (collectively, "United Heritage" or "Plaintiffs") originally filed this action for damages and rescission in the Fourth Judicial District of the State of Idaho on October 27, 2006.  Named as Defendants were First Matrix Investment Services Corp., United Western Bancorp (collectively, "First Matrix" or "Defendants"), Duncan-Williams, Inc., Duncan F. Williams, and Carolyn Williams (collectively, "Duncan Williams").  Also named were Brian Curd, Chief Executive Officer of First Matrix, Kent Snodgrass, Senior Vice President of First Matrix, Scot T. Wetzel, President and Chief Executive Officer of United Western Bancorp and Michael J. McCloskey, Chief Operating Officer of United Western Bancorp.[1]

Defendants First Matrix and United Western removed this case to this Court on December 12, 2006 on the basis of diversity jurisdiction.[2]  (Docket No. 1.)  In the original Complaint, Plaintiffs brought four causes of action: 1) violation of the Idaho Uniform Securities Act ("IUSA") by all Defendants; 2) violation of the Idaho Consumer Protection Act ("ICPA") by all Defendants except the Individual Defendants; 3) negligent misrepresentation by all Defendants except the Individual Defendants; and 4) fraud by all Defendants except the

---

[1]  These Individual Defendants were never served with a summons and the complaint.  At the hearing on May 7, 2007, the parties agreed to enter into a stipulation regarding the Individual Defendants.  A stipulation has now been filed, dismissing with prejudice Scot T. Wetzel and Michael J. McCloskey.  As to Brian Curd and Kent Snodgrass, they are dismissed without prejudice with the understanding that Plaintiffs could file an amended complaint joining them as parties at a later date.

[2]  Plaintiff United Heritage is an Idaho corporation with its principal place of business in Meridian, Idaho. First Matrix is a Texas corporation with its principal place of business in Denver, Colorado.  United Western is a Colorado corporation with its principal place of business in Denver, Colorado.  Duncan-Williams is a Tennessee corporation with its principal place of business in Memphis, Tennessee.  The Individual Defendants are residents of Colorado, Tennessee, and Texas.

**Memorandum Decision and Order - Page 2**

Individual Defendants.

After the initial round of briefing by the parties, the Plaintiffs agreed to withdraw their claims under the IUSA (Count One) and to dismiss the negligent misrepresentation claim, (Count Three).  In lieu of its claims in Count One under the IUSA, Plaintiffs filed a motion to file a First Amended Complaint, which sets forth a new Count One, asserting similar claims of violations of state security laws based on Colorado and Tennessee statutes.  The First Amended Complaint contained the same claim of negligent misrepresentation (Count Three) which the Court will treat as being dismissed.

## II.
## Factual Background

Periodically, United Heritage purchases securities as part of its overall asset portfolio. United Heritage's claims arise out of what it alleges are the illegal and deceptive sale of investment bonds ("the Bonds") by Defendants First Matrix and Duncan-Williams.  United Heritage alleges that Defendants affirmatively offered, marketed and sold these Bonds to United Heritage by materially misrepresenting their relative risk of loss.  United Heritage alleges that in July 2003, Defendant First Matrix sent to United Heritage an electronic solicitation advertising investment in certain mortgage-backed securities.  At that time, United Heritage asserts that First Matrix was working as an agent and/or dealer for Defendant Duncan-Williams, which was the sole "firm commitment underwriter" and seller of these Bonds.  The Bonds were being issued in order to finance the development and construction of a 60-unit low-income apartment complex in Clarkesville, Georgia.  First Matrix's description of the Bonds in this solicitation emphasized that the investments were "secured" and "governmentally guaranteed."

In response to this solicitation, United Heritage requested additional information and

First Matrix responded by calling United Heritage and orally representing that the securities were of a "mortgage-backed" nature that would:  (1) confer upon the holder a status of real estate mortgagor with a right of foreclosure that would help insure recovery of maturity value; and (2) were protected by a 90% guarantee against principal loss insured through the United States Department of Agriculture ("USDA").

United Heritage requested written confirmation of the Bonds' secured characteristics.  On or about July 21, 2003, First Matrix faxed to United Heritage a Preliminary Summary Sheet ("Preliminary Summary Sheet")[3] which appeared to substantiate all the key features of the Bonds.  United Heritage alleges that this Preliminary Summary Sheet unequivocally represented the "mortgage-backed" nature of the Bonds and that the holder would have the status of real estate mortgagor, with a concomitant direct right of real estate foreclosure that would help to insure recovery of maturity value.  This Preliminary Summary Sheet also stated that all these Bonds would benefit from a 90% guarantee against principal loss issued by the USDA.  There was no language in the Preliminary Summary Sheet that raised the possibility that the USDA guarantee could be subject to any restrictions, conditions or limits.

Subsequent to receiving the Preliminary Summary Sheet, First Matrix again contacted United Heritage by telephone to further market the Bonds.  According to United Heritage, during the course of this conversation, a First Matrix agent expressly reiterated and confirmed that the Bonds were highly secured against principal loss by: (1) a direct right of real estate foreclosure, and (2) the proceeds from a 90% USDA guarantee.  United Heritage also alleges that they made

---

[3]  United Heritage alleges that this Preliminary Summary Sheet was authored, approved or ratified by Duncan-Williams.  The Preliminary Summary Sheet contains the Duncan-Williams logo and its contact information. *See* Motion to Dismiss Defendants Duncan-Williams, Inc., Duncan F. Williams and Carolyn Williams, Exhibit A (Docket No. 13).

**Memorandum Decision and Order - Page 4**

clear that the right to foreclose and the federal guarantee were paramount to United Heritage's consideration of the Bonds as an acceptable investment vehicle.  On or about July 30, 2003, a First Matrix agent contacted United Heritage by email to increase the urgency of its Bonds solicitation as they would soon be purchased by other investors.  United Heritage contends that this email did not make any representations that modified the explicit promises of the USDA guarantee and the foreclosure right, which it alleges were critical to its consideration of the securities.  Other than the Preliminary Summary Sheet, United Heritage was never furnished with any other writings or documents relevant to the Bonds prior to Defendants' request to make a final purchase of the investment.

On or about July 30, 2003, United Heritage purchased a number of the Bonds for $1,789,794.38.  After United Heritage purchased the Bonds, Defendants provided United Heritage with a Revised Preliminary Private Placement Memorandum ("Preliminary PPM") which purportedly gave additional details regarding the securities.  United Heritage alleges that this new document did not contain any information which contradicted or modified the Defendants' prior representations regarding the benefits of a USDA 90% guarantee against loss. United Heritage asserts the Preliminary PPM's description of the foreclosure right was ambiguous and could easily lead to the same conclusions previously portrayed by the Defendants.    On or about February 13, 2006, United Heritage received a notice advising them that the issuer of the Bonds had been declared in default and was unable to pay the required interest due and owing on the investment.  Later, United Heritage was informed that the USDA had declined to extend any guarantee to the Bonds.  United Heritage then learned that the USDA guarantee was contingent upon occupancy levels which the project never achieved.  United

Heritage also learned that the Bonds did not accord a right of direct foreclosure upon any real estate and that the only entity possessing such a right was unwilling to pursue such a remedy without costly financial guarantees from United Heritage.  Upon learning of the Bonds' default and the significant financial losses which would result to all holders, United Heritage contacted First Matrix and requested complete rescission of its purchase.  First Matrix denied this request and refused to repurchase the Bonds for their original sales price.  United Heritage asserts that it has attempted to mitigate its financial loss by selling the Bonds; however at a drastically reduced value.

### III.
### Decision Matrix

Because of the number of parties and the timing of the various motions, the Court will provide an overview of its analysis and the reasons why some aspects of the parties' motions will not be addressed at this time.  The Court will first address Duncan-Williams motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Since the Court has determined that this motion should be granted, the Court will not address all of the arguments made by Duncan-Williams in its motion under Fed. R. Civ. P. 12(b)(6) that United Heritage has failed to state a claim for relief under any of the counts in the original Complaint, in particular Duncan-Williams' argument that the Idaho Consumer Protection Act does not cover security transactions.  Notably, First Matrix did not file a similar motion to dismiss under Rule 12(b)(6) as to the counts in the original complaint.

While the motion by Duncan-Williams was pending, United Heritage filed a motion for leave to file a First Amended Complaint.  This was opposed by both Duncan-Williams and by First Matrix.  However, the First Amended Complaint contained only one new cause of action,

Count One, which alleged a violation of the Colorado and Tennessee state security laws against all Defendants.  Therefore the Court is only required to determine if the complaint should be amended to include this new cause of action.

Since the Court has determined that it can not assert personal jurisdiction over Duncan-Williams for any claims asserted in either the original Complaint or the First Amended Complaint, the motion to amend is futile as to Duncan-Williams.  Also, since the only allegations in the First Amended Complaint that relate to the state of Tennessee are based on Duncan-Williams having done business with United Heritage from that state, the Court at this stage will not allow the First Amended Complaint to include an allegation of a violation of that state statute.  In so doing, the Court recognizes that First Matrix argues in its Memorandum in Opposition to the Motion to File an Amended Complaint (Docket No. 27) that the activity of First Matrix, if any, occurred through an office it apparently maintained in Tennessee and that its offices in Colorado had nothing to do with the transaction.

While this may later prove true, the Court is limited by United Heritage's assertions in the First Amended Complaint that First Matrix's tie to this transaction is through Colorado and not Tennessee.  It may become important later in these proceedings whether Colorado or Tennessee law applies, however at this stage we are dealing with a motion to amend a complaint, not with what substantive law should apply based on facts developed later down the road.

Also, in its opposition to United Heritage's motion to amend the complaint, First Matrix attempts to argue the futility of United Heritage's Idaho Consumer Product Act claim, and other claims, such as common law fraud that requires justifiable reliance.  As mentioned, these claims were in United Heritage's original complaint and First Matrix did not seek to dismiss them.

Procedurally, it would not be proper to seek to dismissal of original and unchallenged claims that are in an original complaint based on the futility argument under a Rule 15 analysis, when those claims are not sought to be added by amendment.  Although the Court does find some merit to some of arguments advanced by First Matrix, particularly in regard to the ICPA claim, it will not address these in the context of a motion to file an amended complaint which seeks only to add a count of Colorado and Tennessee state security law violations.

With this outline, the Court will now address the pending motions.

## IV.
## Duncan-Williams' Motion to Dismiss
## Fed. R. Civ. P. 12(b)(2)

Duncan-Williams has brought a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Duncan-Williams argues that it has never conducted any activity within the state of Idaho.  Other than authoring the Preliminary Summary Sheet that eventually made its way to Idaho, Duncan-Williams states it had no involvement with this sale.

In response, United Heritage argues that Duncan-Williams is subject to personal jurisdiction in Idaho based on their arguments that Duncan-Williams purchased the Bonds from the issuer and as a firm commitment underwriter correspondingly assumed all risk and financial reward for the sale of the Bonds in Idaho.  United Heritage asserts that Duncan-Williams thereby transacted business in Idaho for the purpose of realizing pecuniary gain and enhancing its financial objectives.  Finally, that Duncan-Williams involvement in clearly tortious aspects of the sale directly caused injury in Idaho.

### A.  Standard of Review

In a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proof of demonstrating that jurisdiction is appropriate.  *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).  The plaintiff "need only make a prima facie showing of jurisdictional facts."  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  The Court must take the plaintiff's uncontroverted allegations as true and conflicts between the parties over statements in affidavits are resolved in plaintiff's favor.  *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

### B.  Discussion.

Personal jurisdiction over both parties is required before a court may decide a case in controversy.  U.S. CONST. AMEND. XIV.  As there is not a federal statute governing personal jurisdiction in this case, Idaho law applies.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  In order for an Idaho court to exert jurisdiction over an out-of-state defendant, the Supreme Court of Idaho has imposed a two-part test.  *Smalley v. Kaiser*, 130 Idaho 909, 912, 950 P.2d 1248, 1251 (1997).  First, the act giving rise to the cause of action must fall within Idaho's long-arm statute and second, the constitutional standards of due process must be met.  *Id*.

Idaho's long-arm statute grants jurisdiction to Idaho courts over causes of action which arise from, among other things: "[t]he transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective...;" and "[t]he commission of a tortious act within this state."  IDAHO CODE § 5-514(a),

(b).  In adopting § 5-514, the Idaho Legislature intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution.  *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 75, 803 P.2d 978, 981 (1990).  Thus, the inquiry is the same under both Idaho's long-arm statute and the federal due process clause and the Court need only decide whether asserting personal jurisdiction complies with due process.  *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987).  *See also DBSI Signature Place, LLC v. BL Greensboro, L.P.*, 392 F. Supp. 2d 1206, 1211 (D. Idaho 2005).

There are two types of personal jurisdiction - general and specific.  *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987).  General jurisdiction is exercised by a state when personal jurisdiction is asserted over a "defendant in a suit not arising out of or related to the defendant's contacts with the forum."  *Helicoptores Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 n. 9 (1984).  This occurs when the defendant has "substantial" or "continuous and systematic" contacts with the state to the extent that these contacts approximate physical presence.  *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082 (9th Cir. 2000).  United Heritage does not seek to invoke general jurisdiction in this case.

Specific jurisdiction is exercised by a state when it asserts personal jurisdiction over a defendant in a lawsuit arising out of or related to the defendant's contacts with the forum state.  *Helicoptores v. Hall*, 466 U.S. 408, 414 n. 8 (1984).  Specific jurisdiction depends on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action.  *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).  The Ninth Circuit has established a three-part test to determine whether a court may exercise specific personal jurisdiction over a nonresident defendant:

**Memorandum Decision and Order - Page 10**

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which *arises out of or relates to* the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be *reasonable*.

*Id*. (emphasis added.)  *See also Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995).  The Ninth Circuit has also noted that these "contacts" requirements can be lessened if considerations of reasonableness so demand.  *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986).

The first requirement of "purposeful availment" or "purposeful direction" ensures that a defendant is not haled into court because of random, fortuitous or attenuated contacts or on account of the unilateral activity of third parties.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Purposeful availment and purposeful direction, although often used interchangeably, apply to two different situations, particularly in Ninth Circuit case law.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  A purposeful availment analysis is more often used in suits involving contracts, whereas a purposeful direction analysis is applied in tort cases.  *Id*.

Purposeful availment requires a finding that the defendant has performed some affirmative conduct, such as executing or performing a contract, which allows or promotes the transaction of business within the forum.  *Id*.; *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001).  However, an individual's contract with a nonresident defendant alone does not automatically establish sufficient minimum contacts for the purpose of asserting personal jurisdiction.  *Id*.  In *Doe*, the Ninth Circuit noted you must also evaluate prior negotiations,

contemplated future consequences, terms of the contract and the parties' course of dealing. *Id*.

Purposeful direction requires a finding that the defendant's actions outside the forum state are directed at the forum, such as the distribution in the forum state of goods originating elsewhere. *Schwarzenegger v. Fred Martin Motor Corp.*, 374 F.3d 797, 803 (9th Cir. 2004). In *Dole Food Co. v. Watts*, the Ninth Circuit applied the "effects" test for intentional torts. 303 F.3d 1104, 1111 (9th Cir. 2002). This test requires that the defendant allegedly have: (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id*.

The second requirement for specific jurisdiction is that the contacts constituting purposeful availment or direction be the ones that give rise to the lawsuit. *Id*. at 1088. The Ninth Circuit measures this in terms of "but for" causation, that is, personal jurisdiction is proper only where "but for" the defendant's activities in the forum, the plaintiff's injuries would not have occurred. *Id*; *See also Precision Craft Log Structures, Inc. v. The Cabin Kit Co., Inc.*, 2006 WL 538819, at *8 (D. Idaho 2006). This preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum. *DBSI Signature Place, LLC v. BL Greensboro, L.P.*, 392 F. Supp. 2d 1206, 1212 (D. Idaho 2005).

The third and final requirement is that the exercise of personal jurisdiction be reasonable and comport with the notions of fair play and substantial justice. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). The burden is on the defendant to demonstrate unreasonableness. *Id*. The reasonableness determination requires a court to look at seven factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the

sovereignty of defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the

most efficient judicial resolution of the controversy, (6) the importance of the forum to the

plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative

forum.  *Id.*

Duncan-Williams maintains that United Heritage's complaint does not contain any

allegations that it conducted any activity in the state of Idaho, only that Duncan Williams

authored and/or approved the Preliminary Summary Sheet that was later disseminated by First

Matrix to United Heritage.  Duncan-Williams argues that in United Heritage's Opposition to

Duncan Williams' Motion to Dismiss (Docket No. 21), it gives unsubstantiated and unverified

allegations regarding Duncan-Williams' actions in Idaho that were not contained in the original

complaint.  Duncan-Williams asserts that these allegations are not true and instead maintains the

following: (1) Duncan-Williams purchased the Bonds from an issuer and sold them in private

placement;  (2) three institutional buyers purchased the Bonds, one of which was First Matrix;

(3) Duncan- Williams transferred title to the Bonds to the three institutional investors; (4) None

of the institutional investors were Idaho residents; (5) Duncan-Williams did not later approve,

initiate or sponsor the sale of the Bonds by First Matrix to United Heritage; (6) Duncan-Williams

did not receive any financial or pecuniary benefit from the sale of the Bonds by First Matrix to

United Heritage; and (7) Duncan-Williams did not directly sell, communicate with or

disseminate any information to United Heritage or other Idaho residents.[4]  Duncan-Williams also

---

[4]  In support of many of these assertions, Duncan-Williams submitted the Affidavit of Adis Crihfield with
its reply brief (Docket No. 24).  Adis Crihfield is the Senior Vice-President in the Public Finance Department of
Duncan-Williams.  He essentially attests to the above statements, e.g., that Duncan-Williams did not initiate or
approve the sale to United Heritage and did not receive a financial benefit from it.  United Heritage has moved to
strike this affidavit (Docket No. 34).  *See infra.*

**Memorandum Decision and Order - Page 13**

asserts that First Matrix was not its agent or broker and that to the extent that United Heritage came into possession of the Preliminary Summary Sheet, it was by the unilateral acts of First Matrix.[5]

As to the first requirement for specific personal jurisdiction, United Heritage maintains that Duncan-Williams "purposefully availed" itself to the laws of Idaho in its role as "firm commitment underwriter" of the Bonds, in which it bears the financial risk and reward of *any* sales, and consequently benefitted from the sale by First Matrix to United Heritage in Idaho. United Heritage also argues because of this status, Duncan-Williams maintained title to the Bonds and therefore had to approve the sale to United Heritage.  United Heritage asserts that Duncan-Williams put the Bonds into the nationwide stream of commerce when it sold them to First Matrix and other institutional buyers and that these buyers then acted as Duncan-Williams' agents or brokers in selling the Bonds.  United Heritage argues that Duncan-Williams should have reasonably foresaw the Bonds being sold in Idaho because First Matrix is based in Colorado and it is reasonable to expect it would solicit buyers in the Western United States, including Idaho.  United Heritage maintains that Duncan-Williams engaged in tortious conduct in Idaho because it authored and/or approved the Preliminary Summary Sheet, which contained misleading statements and was disseminated in Idaho by its "agent" First Matrix and United

---

[5]  Duncan-Williams also submits a decision from the Western District of Oklahoma (*Sagicor Life Ins. Co v. BOSC, Inc., Duncan-Williams, Inc., et al.*, Case No. CIV 06-882-R, January 24, 2007) which involved the same Bonds at issue here.  *See* Duncan-Williams' Notice of Supplemental Authority in Support of Motion to Dismiss (Docket No. 15) and Notice Re: Supplemental Authority (Docket No. 33). In that decision, the court dismissed Duncan-Williams as a defendant for lack of personal jurisdiction because there were no allegations or evidence that "Defendant Duncan purposefully directed any of its activities at residents within the forum state of Oklahoma or that Plaintiff's alleged injuries arise out of relate to those activities..."  However, the court notes that even if two of defendants were acting as agents for Duncan-Williams, their activities for solicitation of the plaintiff were directed at Indiana, not at Oklahoma and thus there was not specific personal jurisdiction.  That court also found that there was no general personal jurisdiction over Duncan-Williams.

**Memorandum Decision and Order - Page 14**

Heritage relied on this Preliminary Summary Sheet in purchasing the Bonds.  It also points out that Duncan-Williams did not seek to limit where these Bonds could be sold and it was not the unilateral act of First Matrix that caused its contact with Idaho.[6]

As to the second requirement for specific personal jurisdiction, United Heritage maintains that "but for" Duncan-Williams' deceptive marketing of securities, this lawsuit would not have arisen.  As to the last requirement, United Heritage asserts that personal jurisdiction over Duncan Williams is reasonable because there is not a great burden in defending in Idaho and Idaho has a clear interest in the outcome of this dispute.

The Court finds that there are not sufficient allegations to support personal jurisdiction over Duncan-Williams in this case.  Duncan-Williams' underwriter status alone is not enough to allow for the assertion of personal jurisdiction.  Additionally, if the mere presence of a document with Duncan-Williams' name on it was sufficient for personal jurisdiction purposes, jurisdiction over it would extend to any jurisdiction where this document is found.  In relying to some degree on the Crihfield Affidavit, which will be discussed in more detail later, and based upon the allegations in United Heritage's complaint, it does not appear Duncan-Williams purposefully availed itself to the laws of Idaho.  Duncan-Williams did not perform any affirmative conduct in the state nor did it direct any of its activities to the state.  However, if in the course of discovery

---

[6] United Heritage likens this case to products liability cases for purposes of showing that Duncan-Williams "purposefully availed" itself to the laws of Idaho.  *See Hedrick v. Daiko Shoji Co., Ltd., Osaka*, 715 F.2d 1355, 1358 (9th Cir. 1983) (finding that Oregon had jurisdiction over a Japanese manufacturer of defective wire-rope splices because the defendant performed a "forum-related act when it produced a splice that it knew was destined for ocean-going vessels serving Untied States ports, including those of Oregon.)  *See also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Aerohawk Aviation, Inc., et. al*, Case No. CV 02-520-E-BLW, Docket No. 217, August 15, 2004. In *National Union Fire Ins.*, which involved a plane crash caused by a defectively manufactured pressure switch, United States District Judge Winmill found that the defendant performed a forum-related act when it sold its pressure switches to Cessna whose aircraft were marketed and distributed on a nationwide basis.  Notably, in that case Plaintiff had submitted that Cessna marketed its products in all fifty states and throughout the world and was one of the largest manufacturers of private aircraft in the world.  *Id*. at 12-16.

United Heritage finds evidence that would allow this Court to assert personal jurisdiction over Duncan-Williams, the Court will allow United Heritage to amend its complaint and bring Duncan-Williams back in as a party.  Because the Court has found there is no personal jurisdiction over Duncan-Williams, it is not necessary to address the merit of United Heritage's Idaho Consumer Protection Act, Tennessee Securities Act and common law fraud claims against Duncan-Williams.

**V.**

**United Heritage's Motion to Amend**

As United Heritage has abandoned its claims under the Idaho Securities Act, it seeks leave to amend its complaint, pursuant to Fed. R. Civ. P. 15(a), to add claims under the Tennessee Securities Act ("TSA"), at TENN. CODE ANN. § 48-2-101, *et seq.*, and the Colorado Securities Act ("CSA"), at COLO. REV. STAT. ANN. § 11-51-101, *et seq*.

**A.     Standard of Review**

Federal Rule of Civil Procedure 15(a) addresses amendments to pleadings.  Once a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Id.*  Leave to amend is left within the sound discretion of the trial court.  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15--to facilitate decision on the merits, rather than on the pleadings or technicalities." *Id.*  Further, "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'"  *Id.*, *quoted in DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the

opposing party, and futility of amendment." *DCD Programs*, 833 F.2d at 186; *see also Foman v. Davis*, 371 U.S. 178, 182, (1962) (identifying these factors that later became the test).

United Heritage maintains it meets the above standard because it seeks amendment at the very outset of the dispute when no discovery has been served nor has significant time been expended by the parties.  It also points out that a revision of claims would advance the fair resolution of litigant rights and would not engender any prejudice to any parties.  United Heritage advances that it is not guilty of bad faith nor undue delay.

### B.      Futility of Amendment

A motion for leave to amend may be denied if it appears to be futile or legally insufficient.  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  A proposed amendment is only futile if no set of facts can be proven under the amendment of the pleadings that would constitute a valid and sufficient claim or defense.  *Id*.  If it could be defeated on a motion for summary judgment, an amendment will be deemed futile.  *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986).

### C.      Applicability of the Colorado Securities Act

First Matrix maintains that there it not a sufficient territorial nexus between First Matrix and Colorado such that a claim can be brought against First Matrix under the CSA.  C.R.S.A. § 11-51-102(3) states: "an offer to sell or to purchase is *in this state*, whether or not either party is then present in this state, when the offer originates from this state or is directed by the offeror to this state and is received at the place to which it is directed or, in the case of a mailed offer, at any post office in this state" (emphasis added).  It should be noted that First Matrix is a Texas corporation with its principal place of business in Denver, Colorado and United Western is a

**Memorandum Decision and Order - Page 17**

Colorado corporation with its principal place of business in Denver, Colorado.  First Matrix maintains that there is no connection to Colorado in this litigation, other than as its place of business and incorporation and that does not establish a connection to the sale of the security.

In a case interpreting this "territorial" provision of the CSA, the court held that are three jurisdictional requirements for invoking this statute: (1) there must be an offer or sale; (2) the transaction must involve a security; and (3) the transaction must take place within the state. *Simms Inv. Co. v. E.F. Hutton & Co. Inc.*, 699 F. Supp. 543, 546 (M.D.N.C. 1988) (interpreting a repealed portion of the Colorado Securities Act).  In that case, the court found that the allegation that the offer, acceptance or both occurred in Colorado alleged a sufficient territorial nexus to survive a motion to dismiss.  *Id.*

United Heritage asserts that it has pleaded facts in its proposed First Amended Complaint from which it is reasonable to infer the requisite territorial nexus between Colorado and the transaction at issue.  These allegations include a series of communications relating to the offer and sale of the Bonds between First Matrix and United Heritage and the allegation that First Matrix's principal place of business is in Denver, Colorado.  United Heritage submits that based on these allegations, it meets the standard to amend its complaint.

The standard for motions to amend is very liberal and leave should be granted unless "no set of facts can be proven under the amendment of the pleadings that would constitute a valid and sufficient claim or defense."  By alleging the offer was from First Matrix, who maintains its principal place of business in Denver, Colorado, United Heritage has met this standard.  *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  First Matrix has raised factual disputes through its denial that any of these communications took place in Colorado but that is

not enough to defeat the motion to amend.  If there are factual disputes over where the communications took place, those should be resolved at a later time and will not defeat the motion to amend as this time.

      **D.**      **Applicability of the Tennessee Security Act.**

The only tie Tennessee has to this case was through the First Amended Complaint's allegations that Duncan-Williams' principal place of business was Tennessee and that Duncan-Williams participated in the sale.  The Court has dismissed Duncan-Williams for reasons set forth above.

At this point the Court will deny the motion to amend to assert claims under the Tennessee Securities Act.  The Court does so knowing the allegations made by First Matrix that only its office in Tennessee was involved in this transaction.  First Matrix submits that the only correspondence from it originated in Tennessee.  It also submits that the offer to sell securities originated in Tennessee, the informative materials were sent from Tennessee, United Heritage directed correspondence to Tennessee, and the payment submitted by United Heritage was directed to Tennessee.  It asserts that no part of the securities sale at issue took place in Colorado.      This may later prove to be the case, but in considering Plaintiffs' request to amend, the Court must look at the allegations in the proposed amended complaint to determine if it would be futile to allow the amendment.  Clearly on the face of the proposed complaint, it would be futile to allow the amendment to assert claims under a statute that is only before the Court due to the status and role of a dismissed defendant, Duncan-Williams.

Rather than having a smorgasbord of state security statutes and corresponding state law to deal with, the Court expects the parties, after some discovery, to decide if Colorado or

Tennessee law should apply.  If First Matrix is correct that its offices in Colorado had no involvement in this sale and that all of the dealing occurred out of its Tennessee offices, then Plaintiffs should agree that Tennessee, not Colorado, law will apply and a stipulation to that effect should be filed with the Court.  However for purposes of the motion to amend the complaint, only Colorado law will be alleged for the time being.

      **E.**        **Timeliness of Claims Under the CSA**

C.R.S.A. § 11-51-604(8) provides that no action shall be maintained unless commenced "more than three years after the discovery of facts giving rise to a cause of action....or after such discovery should have been made by the exercise of reasonable diligence and in no event more than five years after purchase or sale..."   United Heritage maintains that since it purchased these Bonds in July 2003, it has until July 2008 to bring its claims and thus they were timely filed.

First Matrix[7] argues that the applicable statute of limitations is from the now-repealed Idaho Securities Act.  As the previous statute of limitations stated an action could not be brought more than three years from contract of sale, and the sale took place in July 2003 and this lawsuit was not filed until October 27, 2006, Plaintiff's claim would be barred.[8]  *See* I.C. § 30-1446(3) (repealed).  First Matrix argues this is the applicable statute of limitations because statute of limitations are procedural issues to be governed by the law of the forum.  *See Garland v. Advanced Medical Fund, L.P., II*, 86 F. Supp. 2d 1195 (N.D. Ga. 2000) (finding that procedural or remedial questions are governed by the law of the forum).  The court in *Garland* applied

---

      [7]  First Matrix also includes Defendant United Western Bancorp, its parent corporation.  For convenience, the Court will refer to these Defendants collectively as First Matrix.

      [8]  United Heritage has conceded that the former Idaho Securities Act statute of limitations would bar its action and that is why it withdrew its Idaho Securities Act claims from the amended complaint that it seeks to file.

Georgia's statute of limitations to an action brought under Florida securities laws.  *Id*. at 1207.  However, it did so for reasons specific to Georgia law, *i.e.*, that the statute of limitations contained in the Florida securities statutes was longer than Georgia's statute of limitations.  *Id*. at 1207.  It should also be noted that the court in that case characterized the statute as a statute of limitations, not a statute of repose.  *Id*. at 1206-07.

Plaintiff characterizes the statutes in questions as "statutes of repose"[9] which it maintains are substantive law, rather than procedural, and should be governed by the law of Colorado.  Several states have held that statutes of repose are considered substantive law.  *See, e.g., Thornton v. Cessna Aircraft Co.*, 886 F.2d 85 (4th Cir. 1989); *Wayne v. Tenn. Valley Authority*, 730 F.2d 392 (5th Cir. 1984); *Hinds v. CompAir v. Kellogg*, 776 F. Supp. 1102 (E.D. Va. 1991); *Anabaldi v. Sunbeam Corp.*, 651 F. Supp. 1343 (N.D. Ill. 1987); *Bolick v. Amer. Barmag Corp.*, 293 S.E.2d 415 (N.C. 1982).  *See also Nett ex rel. Nett v. Bellucci*, 269 F.3d 1, 5 (1st Cir. 2001) ("a mass of authority treats statutes of repose as substantive rather than procedural.")  Idaho has recognized the common law rule that the forum normally applies its own statute of limitations to actions before it, but has not addressed the issue of statutes of repose.  *Miller v. Stauffer Chem. Co.*, 99 Idaho 299, 301, 581 P.2d 345, 348 (1978).  It should be noted that Idaho has enacted a "borrowing statute," which essentially states that if a cause of action is time-barred in the state where it accrued, it is barred in Idaho as well.  These types of statutes are designed to avoid forum shopping.

_____

[9]  A statute of repose is "a statute that bars a suit a fixed number of years after the defendant acts in some way (as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered any injury."  In comparison, a statute of limitations is defined as "a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered.)"  BLACK'S LAW DICTIONARY 666-67 (7th ed. 1999).

**Memorandum Decision and Order - Page 21**

Statutes of repose are typically seen in products liability and other tort statutes.  *See, e.g.,* I.C. § 6-1403.  Indeed, most of the cases cited by Plaintiff regarding statutes of repose are products liability cases.  However, it also appears that securities laws often contain both a statute of limitations and a statute of repose.  *See J.E. Liss & Co. v. Levin*, 201 F.3d 848, 850 (7th Cir. 2000) ("Securities laws typically specify both a statute of limitations, which runs from when the plaintiff should have discovered that he had a claim, and a (longer) statute of repose, which runs from some fixed date such as the date on which the security was purchased.")  It appears from this Seventh Circuit case and the ones cited by United Heritage that the statute of "limitations" from the former Idaho Securities Act was actually a statute of repose.[10]  The former Idaho Securities Act did not contain a true statute of limitations.  In following these jurisdictions cited by United Heritage, statutes of repose are substantive law and Idaho law would not apply.  Because this lawsuit was filed well within the five year statute of repose contained in the Colorado Securities Act, United Heritage's claims are timely and amendment is not futile.

## VI.
## Plaintiffs' Motion to Strike Affidavit of Adis Crihfield

United Heritage moves to strike the affidavit of Adis Crihfield that was attached to Duncan-Williams' reply memorandum in support of its Motion to Dismiss (Docket No. 24).  United Heritage maintains that the affidavit should not be considered by the Court because the affiant attests to matters outside the personal jurisdiction issue (the purpose for which Duncan-Williams submitted the affidavit) that go to the merits of the case, such as whether Duncan-Williams is a "firm commitment underwriter" and a "statutory seller" under applicable law.  In

---

[10]  I.C. § 30-1446(3) (repealed) stated:  "No person may sue under this section more than three (3) years after the contract of sale."

the alternative, should the Court elect to consider the Crihfield Affidavit, United Heritage requests the opportunity to conduct tailored discovery on the factual issues raised in the affidavit, pursuant to Rule 56(f).

Duncan-Williams maintains that it only submitted this affidavit to address allegations relating to personal jurisdiction.  As to Plaintiff's request for limited discovery should the Court consider the affidavit, Duncan-Williams argues that the law is clear that a court can look outside the four corners of the pleadings in deciding a motion to dismiss for lack of jurisdiction.  *See McCarthy v. United States*, 860 F.2d 558, 560 (9th Cir. 1988) ("[W]hen considered a motion to dismiss pursuant to Rule 12(b)(1) [motion to dismiss for lack of subject matter jurisdiction] the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.")  The Court finds it appropriate to consider the Crihfield Affidavit, and limited its applicability to the personal jurisdiction issue.

## **ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)      Duncan-Williams' Motion to Dismiss (Docket No. 13), filed January 16, 2007, be **GRANTED**;

2)      United Heritage's Motion for Leave to File Amended Complaint (Docket No. 16), filed February 2, 2007, be **GRANTED IN PART AND DENIED IN PART**;

3)      United Heritage's Motion to Strike Affidavit of Adis Crihfield (Docket No. 34), filed April 13, 2007, be **DENIED**.

4)      United Heritage is to file a First Amended Complaint with the proper

defendants and claims that have not dismissed or which it has been granted to leave to amend to

include.

**IT IS SO ORDERED.**

DATED: June 20, 2007

_____
Honorable Mikel H. Williams
Chief United States Magistrate Judge